No. 26-3196

IN THE

# United States Court of Appeals
# for the Sixth Circuit

KALSHIEX LLC,

*Plaintiff-Appellant;*

v.

MATTHEW SCHULER, *et al.*,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Southern District of Ohio
No. 2:25-cv-1165 (Morrison, C.J.)

## KALSHIEX LLC'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL OF THE DISTRICT COURT'S MARCH 9, 2026 ORDER

GRANT R. MAINLAND
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

MICHAEL J. HUNTER
MATTHEW L. JALANDONI
FLANNERY | GEORGALIS, LLC
175 South Third St., Ste. 1060
Columbus, OH 43215

April 7, 2026

NEAL KUMAR KATYAL
JOSHUA B. STERLING
WILLIAM E. HAVEMANN
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7500
whavemann@milbank.com

*Counsel for Plaintiff-Appellant
KalshiEX LLC*

# TABLE OF CONTENTS

Page

INTRODUCTION ...............................................................................1

ARGUMENT ................................................................................... 2

I.    KALSHI IS LIKELY TO SUCCEED ON THE MERITS...................................... 2

      A.    Kalshi's Event Contracts Are "Swaps"......................................... 2

      B.    The CEA Preempts State Regulation Of On-DCM Trading .........7

II.   KALSHI WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION AND THE EQUITIES FAVOR AN INJUNCTION .................................................... 11

CONCLUSION .................................................................................14

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

INDEX OF EXHIBITS

i

# TABLE OF AUTHORITIES

Page(s)

**CASES:**

*Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.,*
  977 F.2d 1147 (7th Cir. 1992) .......................................................... 10, 11

*CFTC v. Trade Exch. Network Ltd.,*
  117 F. Supp. 3d 29 (D.D.C. 2015)........................................................... 3

*Chi. Mercantile Exch. v. SEC,*
  883 F.2d 537 (7th Cir. 1989) .................................................................10

*Churchill Downs Tech. Inits. Co. v. Mich. Gaming Control Bd.,*
  162 F.4th 631 (6th Cir. 2025) ........................................................7, 11, 12

*KalshiEX LLC v. Flaherty,*
  2026 WL 924004 (3d Cir. Apr. 6, 2026)................................. 1, 2, 3, 5, 10

*KalshiEX LLC v. Orgel,*
  2026 WL 474869 (M.D. Tenn. Feb. 19, 2026)...........................................1

*Morales v. Trans World Airlines, Inc.,*
  504 U.S. 374 (1992) .............................................................................. 11

*Murphy v. NCAA,*
  584 U.S. 453 (2018)............................................................................ 5, 6

*PPL EnergyPlus, LLC v. Nazarian,*
  753 F.3d 467 (4th Cir. 2014)................................................................... 9

*Pub. Serv. Co. v. Cont'l Cas. Co.,*
  26 F.3d 1508 (10th Cir. 1994)................................................................. 3

*Puerto Rico v. Franklin Cal. Tax-Free Tr.,*
  579 U.S. 115 (2016) ...............................................................................7

*United States v. Kumar,*
  750 F.3d 563 (6th Cir. 2014) ............................................................... 4, 5

# TABLE OF AUTHORITIES—Continued

Page(s)

*United States v. Texas,*
144 S. Ct. 797 (2024)..................................................................13

*United States v. Texas,*
794 F. Supp. 3d 427 (W.D. Tex. 2025) ................................................11, 12

**STATUTES:**

7 U.S.C. § 1a(47)(A)(ii) .................................................................. 2

7 U.S.C. § 2(a)(1)(A) ......................................................................7

7 U.S.C. § 7a-2(c)(5)(C) ................................................................. 6

7 U.S.C. § 7a-2(c)(5)(C)(i)(V) ........................................................ 6

7 U.S.C. § 16(e)(2).......................................................................... 8

31 U.S.C. § 5362(1)(E) .................................................................... 8

**REGULATIONS:**

17 C.F.R. § 38.151(b) ...................................................................... 9

17 C.F.R. § 40.11(c) .......................................................................10

*Further Definition of "Swap," "Security-Based Swap," and
"Security-Based Swap Agreement"; Mixed Swaps;
Security-Based Swap Agreement Recordkeeping,*
77 Fed. Reg. 48,208 (Aug. 13, 2012) ......................................... 5

**LEGISLATIVE MATERIALS:**

156 Cong. Rec. S5902 (daily ed. July 15, 2010) ........................... 6

H.R. Rep. No. 93-1383 (1974) ....................................................... 6

H.R. Rep. No. 106-711, pt. 2 (2000)............................................... 8

# TABLE OF AUTHORITIES—Continued

Page(s)

**OTHER AUTHORITIES:**

Andrew Ross Sorkin, et al., *Hedging, not betting, on sports via prediction markets*, N.Y. Times: DealBook (Feb. 10, 2026), https://perma.cc/J5FM-YHYH ............................................................. 4

*Associated*, Oxford English Dictionary (3d ed. 2011) ................................... 3

*Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003) ..... 3

*Event*, Webster's Encyclopedic Unabridged Dictionary (1st ed. 2001) ......... 3

*Event*, Webster's II New Coll. Dictionary (3d ed. 2005) .............................. 3

**INTRODUCTION**

This is a quintessential case warranting relief pending appeal. Defendants do not dispute that the decision below creates an intra-Circuit split, and they all but ignore Judge Trauger's recent decision granting Kalshi a preliminary injunction. *See KalshiEX LLC v. Orgel*, 2026 WL 474869 (M.D. Tenn. Feb. 19, 2026). Nor do Defendants dispute that the CFTC has squarely rejected their position, warning that it "present[s] a fundamental threat to Congress's statutory design" that would create "a seismic shift in the longstanding status quo between CFTC and state authority." CFTC Br. at 2. And Defendants ask this Court to ignore *Churchill Downs*, which rejected many of the same preemption arguments Defendants repackage.

Kalshi's entitlement to relief was clear when it filed its motion, but has become even clearer since. The Third Circuit has now unequivocally ruled in Kalshi's favor in a similar case, concluding that the CEA "preempts state laws that directly interfere with swaps traded on DCMs," and that Kalshi's sports-event contracts fall under the CFTC's "exclusive jurisdiction." *KalshiEX LLC v. Flaherty*, 2026 WL 924004, at *2 (3d Cir. Apr. 6, 2026). The decision below thus now splits from the only court of appeals decision addressing the question. Additionally, the CFTC has filed affirmative lawsuits against Arizona, Illinois, and Connecticut to protect its "exclusive jurisdiction" and

1

prevent states from punishing Kalshi "for doing precisely what is permitted under federal law." *E.g.*, Ex. 1 ¶¶ 1-2.

An injunction pending appeal is warranted. Defendants' contrary position asks this Court to ignore the plain statutory text in favor of extratextual policy arguments. And Defendants identify no reason to subject Kalshi to irreparable harm—criminal exposure, unrecoverable costs, and noncompliance with its CFTC-imposed obligations—while this expedited appeal is pending.

## ARGUMENT

### I. KALSHI IS LIKELY TO SUCCEED ON THE MERITS.

The Third Circuit's decision confirms that Kalshi is likely to prevail in showing that "the CFTC has exclusive jurisdiction" over "Kalshi's sports-related event contracts." *Flaherty*, 2026 WL 924004, at *2.

### A. Kalshi's Event Contracts Are "Swaps."

The CEA defines "swap" to include any "contract" that provides for payment "dependent on the occurrence, nonoccurrence, or the extent of the occurrence of an event or contingency associated with a potential financial, economic, or commercial consequence." 7 U.S.C. § 1a(47)(A)(ii). Kalshi's contracts plainly qualify. Defendants skip over the text, instead offering various extratextual policy rationales. None is persuasive.

*First*, Defendants principally contend (at 9-10) that sports bets "depend on *outcomes*, not *events*." But "outcome" is simply one meaning of "event." Dictionaries define "event" as "[t]he actual outcome or final result," *Event*, Webster's II New Coll. Dictionary (3d ed. 2005), or "the outcome, issue, or result of anything," *Event*, Webster's Encyclopedic Unabridged Dictionary (1st ed. 2001). Courts agree. *See Pub. Serv. Co. v. Cont'l Cas. Co.*, 26 F.3d 1508, 1514-15 (10th Cir. 1994). The statute also covers any "contingency"—"something liable to happen as ... [a] result of something else." *Contingency*, Merriam-Webster's Collegiate Dictionary (11th ed. 2003). That term easily encompasses a team winning a game. And federal courts and the CFTC have long treated event contracts as based on "outcomes." *See CFTC v. Trade Exch. Network Ltd.*, 117 F. Supp. 3d 29, 32 (D.D.C. 2015).

Defendants argue (at 10-11) that sports events are not "associated with" potential financial consequences. But "associated" means "connect[ed]." *Associated*, Oxford English Dictionary (3d ed. 2011). "[S]porting events ... generate billions of dollars"—"precisely the type of economic exposure that derivatives markets are designed to mitigate." CFTC Br. at 19-20. As the Third Circuit explained, "[t]he outcome of a sports event certainly can be associated with a potential financial[] ... consequence," including for "sponsors, advertisers," and other "stakeholders." *Flaherty*, 2026 WL 924004, at

3

\*3. Defendants claim (at 10-11, 15) that such consequences must be "inherent," but the statute requires only "potential" consequences—effectively the opposite of "inherent."

Defendants wrongly assert (at 11) that there is no basis to hedge sports events:  Market participants are already hedging millions in sports-related risk through Kalshi.  *See* Andrew Ross Sorkin, et al., *Hedging, not betting, on sports via prediction markets*, N.Y. Times: DealBook (Feb. 10, 2026), https://perma.cc/J5FM-YHYH.  And in any event, the statute does not condition "swap" on hedging.

Defendants' reliance (at 6, 11) on Kalshi's briefing in *KalshiEX LLC v. CFTC*, No. 24-5205 (D.C. Cir.), is misplaced.  Kalshi's argument there was not that sports events categorically lack potential economic consequences. In fact, Kalshi expressly noted the opposite.  *See* Ex. 2 at 5.  Kalshi instead argued that Congress subjected gaming contracts to the Special Rule, thus "empower[ing] the CFTC to *at least review the category of game-based contracts.*"  Appellee Br. at \*45, 2024 WL 4802698 (Nov. 15, 2024) (emphasis added).

*Second,* Defendants invoke various interpretive canons, claiming (at 17) Kalshi "skips past" these canons by beginning with the text.  But statutory interpretation "look[s] first" to the text, and canons only when the text is

4

ambiguous. *United States v. Kumar*, 750 F.3d 563, 568-569 (6th Cir. 2014) (citation omitted). And "[a] plain reading of the [CEA's] text suggests that Kalshi's sports-event contracts fit comfortably within the statutory definition." *Flaherty*, 2026 WL 924004, at *3 (citation omitted).

Defendants invoke (at 11-14, 17) the major-questions doctrine, but this argument turns on a straw man. Kalshi's argument would emphatically *not* (at 17) force all sports betting onto DCMs. Instead, Dodd-Frank reaffirmed the CFTC's exclusive jurisdiction over on-DCM trading while leaving states entirely free to regulate off-DCM transactions. Further, exercising its authority to "further define" swap, the CFTC has explained that "consumer and commercial transactions" occurring *off*-DCM, such as sports bets, are not swaps. 77 Fed. Reg. 48,208, 48,247 (Aug. 13, 2012). The Third Circuit thus rejected the argument "that anything from bingo games to ping-pong matches will fall under the CFTC's jurisdiction," noting that "Kalshi makes no such claim" and that in "such far-fetched scenarios, Congress's express delegation to the CTFC and the Securities and Exchange Commission to 'further define' swaps would prove useful." *Flaherty*, 2026 WL 924004, at *3 (citations omitted). And, contrary to Defendants' suggestion (at 24), nothing about *Murphy v. NCAA*, 584 U.S. 453 (2018), addressed whether the CEA

5

preempts state laws.  Instead, *Murphy* recognized that "Congress can regulate sports gambling directly[.]"  *Id.* at 486.

*Third*, Defendants acknowledge (at 19) that the Special Rule expressly contemplates that event contracts involving the enumerated categories—which include "gaming"—can be swaps.  7 U.S.C. § 7a-2(c)(5)(C).  Defendants' only response (at 19) is that the Special Rule is "ancillary" to the definition of "swap" itself.  But, regardless of where Congress located the Special Rule, it shows that Defendants cannot be correct that Congress intended categorically to exclude gaming contracts from the CFTC's exclusive jurisdiction.  7 U.S.C. § 7a-2(c)(5)(C)(i)(V).

*Fourth*, while the Court need not address legislative history given the clear text, Defendants are wrong (at 16) that this history supports them.  The conference report is unmistakable:  Congress intended to "preempt the field" regarding trading on DCMs.  H.R. Rep. No. 93-1383, at 35-36.  The statements from Senator Lincoln that Defendants cite undermine Defendants' argument, as they recognize that the Special Rule would "restore *the CFTC's authority*" to prohibit contracts involving gaming.  156 Cong. Rec. S5902, S5906 (daily ed. July 15, 2010) (emphasis added).  As Senator Lincoln informed the Third Circuit, "Congress intended for the CFTC alone to make

6

that determination."  Members of Congress Br. at *16, *Flaherty*, 2025 WL 2306500 (3d Cir. July 31, 2025).

### B.   The CEA Preempts State Regulation Of On-DCM Trading.

No Presumption Against Preemption.  Defendants do not dispute that courts "do not invoke any presumption against pre-emption" where, as here, a statute "contains an express pre-emption clause." *Puerto Rico v. Franklin Cal. Tax-Free Tr.*, 579 U.S. 115, 125 (2016).  In *Churchill Downs Technology Initiatives Co. v. Michigan Gaming Control Board*, this Court declined to apply the presumption, noting that "the presumption against preemption doesn't apply" because the "plain text" of the federal law at issue "forecloses Michigan's interpretation" and because "the regulation of *interstate* gambling isn't a traditional area of state regulation."  162 F.4th 631, 641 n.5 (6th Cir. 2025).  Defendants (at 18) denigrate *Churchill Downs*'s rejection of the presumption as "unreasoned" "*dicta*."  But that is wrong; the Court's determination of the relevant area of regulation was necessary to its ruling that the presumption did not apply, and it is binding here.

Express preemption.  Defendants have no response to the CEA's plain text, which expressly preempts state regulation of trading on DCMs.  7 U.S.C. § 2(a)(1)(A).  They suggest the real question (at 19) is whether "sports bets [are] swaps," but that argument concedes that state law would be preempted

7

if Kalshi's contracts are swaps, proving the latter half of Defendants' merits argument is incorrect.

Defendants cite (at 18) Section 16(e)(2) as evidence against preemption, but that provision supports Kalshi. It "preempt[s]" state "gaming" and "bucket shop[ ]" laws as to "excluded"—off-DCM—transactions. 7 U.S.C. § 16(e)(2). Congress's enactment of this provision in 2000 turned critically on its recognition that "the current" CEA already "supersedes and preempts" those state laws "in the case of transactions conducted on a registered entity" but not as to excluded transactions. H.R. Rep. No. 106-711, pt. 2, at 71. It thus strongly supports preemption.

Finding preemption would not (at 20) "impliedly repeal[ ]" other federal gambling statutes like IGRA and the Wire Act. Kalshi's contracts are not "bet[s] or wager[s]" under federal law, 31 U.S.C. § 5362(1)(E), and reaffirming CEA preemption of on-DCM transactions is therefore entirely consistent with other gambling legislation.

Field preemption. Defendants' only response (at 21) on field preemption is that even if Congress preempted the field of trading on DCMs, that field would not include "sports betting." Defendants provide no support for this atextual carveout and grapple with *none* of Kalshi's field-preemption arguments. The CEA's text preempts *all* state regulation of trading on DCMs,

8

irrespective of the form that regulation takes.  Defendants cannot carve out certain types of state laws from the preempted field based on speculation about what Congress intended.  *See PPL EnergyPlus, LLC v. Nazarian*, 753 F.3d 467, 475 (4th Cir. 2014) (field preemption does not permit a "case-by-case analysis" of which state laws Congress may have silently wished to preserve).

Conflict preemption.  *First*, as the CFTC has confirmed, Kalshi cannot comply with both Ohio gambling law and its impartial-access obligation.  17 C.F.R. §38.151(b).  Defendants wave away the CFTC's position, explaining that compliance with state geographical limits is an "impossibility" for DCMS.  But that brief is obviously relevant:  It directly responded to state enforcement efforts against Kalshi itself.  *See* CFTC Br. at 17-18.  And because the CFTC filed its brief after briefing below concluded, the district court here did not have the benefit of the CFTC's views.  The CFTC further confirmed conflict preemption last week, when it filed suits against Arizona, Connecticut, and Illinois for violating the Supremacy Clause by enforcing against DCMs—including Kalshi.  *See* Exs. 1, 3, 4.  On conflict preemption, the complaints all explain that "[i]f a state bans [a] contract, the DCM cannot fulfill its federal mandate to provide impartial national access."  *E.g.*, Ex. 1 ¶72. Defendants (at 22) point to some of the CFTC's earlier views on the

9

impartial-access requirement, but the proposed rulemaking they cite (which was never adopted) does not remotely suggest that DCMs can operate subject to state-by-state geographical limits.

Defendants argue that compliance is possible because Section 40.11(a) supposedly "prohibits" DCMs from listing contracts involving certain enumerated categories, including gaming. For one thing, however, Section 40.11(a) is not a mandatory prohibition. Rather, subsection (c) gives the CFTC discretion to subject contracts involving "gaming" to public-interest review, after which it may approve or order delisting of the contracts. 17 C.F.R. § 40.11(c). And for another, Defendants' reliance on Section 40.11 is an inadvertent concession, because if Kalshi's contracts violate a CFTC regulation, the remedy is a CFTC enforcement action, not state-by-state regulation. Where "the CFTC has jurisdiction, its power is exclusive." *Chi. Mercantile Exch. v. SEC*, 883 F.2d 537, 548 (7th Cir. 1989).

*Second,* as the Third Circuit held, state-by-state regulation of DCMs would produce "exactly the patchwork that Congress replaced wholecloth by creating the CFTC." *Flaherty*, 2026 WL 924004, at *5. Defendants have no response. They concede (at 22) that if Kalshi's contracts are swaps, then state regulation of those contracts poses an obstacle to the CEA's objectives. Such regulation does not raise a "*limited* conflict." *Id.* It eviscerates the CEA's

10

purpose of avoiding the "total chaos" that would result from subjecting nationwide exchanges to 50 different states' conflicting regimes. *Am. Agric. Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156 (7th Cir. 1992) (citation omitted).

## II.   KALSHI WILL SUFFER IRREPARABLE HARM ABSENT AN INJUNCTION AND THE EQUITIES FAVOR AN INJUNCTION.

Irreparable harm:  Defendants do not seriously dispute that Kalshi will suffer irreparable harm absent an injunction.  Nor could they.  Absent an injunction, Kalshi faces a "Hobson's choice": either "violate" state law and expose itself to "potentially huge liability," or "suffer the injury of obeying the law during the pendency of the proceedings and any further review."  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992).  Either option would result in irreparable harm. *See* Mot. at 21-24.

Defendants have no answer to this Court's holding that "when constitutional rights are threatened or impaired, irreparable injury is presumed." *See Churchill Downs*, 162 F.4th at 642 (citation omitted).  Instead, Defendants merely claim (at 24) that "a private party cannot claim a constitutional *right* to be regulated by the federal government rather than the States."  But "individuals have a constitutional right to be free from enforcement of state laws that are preempted by federal law." *United States v. Texas*, 794 F. Supp.

3d 427, 452 (W.D. Tex. 2025).  That is precisely why irreparable harm "necessarily results from the enforcement of a preempted law." *Id.*

Defendants (at 23-24) suggest that Kalshi is "exaggerat[ing]" any harm from ceasing its operations "because Kalshi has demonstrated in Nevada that it can continue to operate in such conditions."  But Kalshi has not yet been required to geofence in Nevada.  In any event, compliance in Nevada does not negate the irreparable harm that would befall Kalshi absent an injunction.  Nor do Defendants dispute that abruptly terminating trading in Ohio would subject Kalshi to irreparable harms, including reputational harm and loss of competitive position and goodwill—which "courts can't easily compensate" and, accordingly, constitute irreparable injury.  *See Churchill Downs*, 162 F.4th at 643.

The Equities and Public Interest:  Defendants maintain (at 23) that an injunction would "injure Ohio's sovereign interests in exercising its police power."  But they once again ignore *Churchill Downs*'s holding that where state law is preempted, "no cognizable harm results from stopping the conduct, and it's always in the public interest to prevent constitutional violations." 162 F.4th at 642 (citation omitted).  Defendants have no right to subject Kalshi to preempted laws and, accordingly, will suffer no cognizable

12

harm if a stay is granted.  Nor do they offer any evidence that users in Ohio have been harmed from trading on Kalshi.

Defendants mischaracterize (at 3) Kalshi's request for an administrative stay.  It is Defendants—not Kalshi—who altered the status quo by asserting jurisdiction over DCM.  And an administrative stay is needed to minimize immediate irreparable harm to Kalshi.  *United States v. Texas*, 144 S. Ct. 797, 798 (2024) (Barrett, J., concurring) (courts seek "to minimize harm" in deciding whether to grant administrative relief).  Under these circumstances, a temporary pause is appropriate to ensure that this Court can deliberate on these important federal questions without irreparable harm to Kalshi.  *Id.* at 798-799.

13

# CONCLUSION

The Court should grant an injunction pending appeal.  Alternatively, the Court should grant an emergency administrative stay while this motion is pending.

Date: April 7, 2026

Respectfully submitted,

/s/ *William E. Havemann*

GRANT R. MAINLAND
ANDREW L. PORTER
DAVIS CAMPBELL
MILBANK LLP
55 Hudson Yards
New York, NY 10001

MICHAEL J. HUNTER
MATTHEW L. JALANDONI
FLANNERY | GEORGALIS, LLC
175 South Third Street, Ste. 1060
Columbus, OH 43215

WILLIAM E. HAVEMANN
NEAL KUMAR KATYAL
JOSHUA B. STERLING
SAMANTHA K. ILAGAN
MILBANK LLP
1101 New York Ave., N.W.
Washington, DC 20005
(202) 835-7500
whavemann@milbank.com

*Counsel for Plaintiff-Appellant*
*KalshiEX LLC*

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 2,593 words, excluding the parts of the reply exempted by Federal Rule of Appellate Procedure 27(a)(2)(B) and 32(f). This reply also complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type requirements of Federal Rule of Appellate Procedure 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in Georgia font 14-point type face.

Date: April 7, 2026

/s/ *William E. Havemann*
William E. Havemann

## CERTIFICATE OF SERVICE

I hereby certify that, on April 7, 2026, I caused the foregoing to be electronically filed with the Clerk of the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system.


Date: April 7, 2026                          /s/ *William E. Havemann*
                                             William E. Havemann

# INDEX OF EXHIBITS

| Exhibit | Title |
| --- | --- |
| 1 | Complaint, Dkt. No. 1, *United States v. Arizona*, No. 2:26-cv-2246 (D. Ariz. Apr. 2, 2026) |
| 2 | Excerpt of Transcript of Oral Argument in *KalshiEX LLC v. CFTC*, No. 24-5205 (D.C. Cir. Sep. 19, 2024) (filed in *KalshiEX LLC v. Martin*, No. 1:25-cv-01283 (D. Md. June 13, 2025), Dkt. No. 36-3) |
| 3 | Complaint, Dkt. No. 1, *United States v. Connecticut*, No. 3:26-cv-498 (D. Conn. Apr. 2, 2026) |
| 4 | Complaint, Dkt. No. 1, *United States v. Illinois*, No. 1:26-cv-3659 (N.D. Ill. 1:26-cv-3659) |