

# EXHIBIT 1

# OHIO CASINO CONTROL COMMISSION



Mike DeWine
*Governor*

Thomas J. Stickrath
*Chair*

April 14, 2026

KalshiEX LLC
594 Broadway, Suite 407
New York, NY 10012
**Sent Via Certified Mail**

**Sent Via Email to:**   Support@Kalshi.com and Legal@Kalshi.com

Re:   Case No. 2026-SGR-001
Notice of Intent to Impose a Penalty or Fine for Operating or Conducting Unlicensed
Sports Gaming in Ohio and Opportunity for Hearing

Dear KalshiEX LLC:

In accordance with Ohio Revised Code ("R.C.") 119.06[1], 119.07, 3772.04, or 3775.02, and Ohio Administrative Code ("Ohio Adm.Code") 3772-21-01, 3775-1-07 or 3775-1-08, the Ohio Casino Control Commission ("Commission") is notifying you that it intends to take administrative action by imposing a civil penalty or monetary fine against KalshiEX LLC ("Kalshi")[2] for operating or conducting unlicensed sports gaming in Ohio.

## Introduction

The Commission is charged with ensuring the integrity of sports gaming in the State of Ohio and has "jurisdiction over all persons conducting or participating in the conduct of sports gaming authorized by [Chapter 3775 of the Revised Code]." R.C. 3775.02(A). The Commission's mandate further includes "the authority to license, regulate, investigate, and penalize those persons in a manner that is consistent with the commission's authority with respect to casino gaming." R.C. 3775.02(A). Specifically, the Commission may "[p]enalize or fine any sports gaming licensee, applicant for a sports gaming license, or other person subject to the commission's jurisdiction." 3775.02(H)(1)(a).

---

[1] R.C. 119.06 states, "Whenever an agency claims that a person is required by statute to obtain a license, it shall afford a hearing upon the request of a person who claims that the law does not impose such a requirement."
[2] For purposes of this Notice: the terms "you" and "your" refer to "KalshiEX, LLC" ("Kalshi") and specific terms contained herein have the same meaning as in R.C. Chapter 3775 Ohio Adm.Code Agency 3775.

Under Ohio law, no one may operate or conduct sports gaming without a license issued by the Commission. R.C. 3775.03(A). "Sports gaming" is "the business of accepting wagers[3] on sporting events[4][,]" R.C. 3775.01(O)(1), and "includes any system or method of wagering on sporting events that the Ohio casino control commission approves, including exchange wagering, parlays, spreads, over-under, moneyline, in-game wagering, single game bets, teaser bets, in-play bets, proposition bets, pools, pari-mutuel sports wagering pools, or straight bets." R.C. 3775.01(O)(2). Ohio law outlines several licenses that authorize online[5], retail[6], and lottery-based[7] sports gaming.

The cornerstone of the Commission's mandate to ensure the integrity of sports gaming resides in enforcing its licensing regime, as "no person shall operate, conduct, or assist in operating or conducting sports gaming in this state without first obtaining an appropriate sports gaming license from the Ohio casino control commission." R.C. 3775.03(A)(1). Applicants for a license to conduct sports gaming, along with employees in control of the applicants or with specified duties, must establish their suitability for licensure by clear and convincing evidence to obtain a license and maintain it, while also paying nonrefundable license fees. *See e.g.*, R.C. 3775.04, 3775.041, 3775.05, and 3775.09. In addition to the high standards of licensure, Ohio law outlines numerous other safeguards and guardrails to protect Ohio consumers and ensure the integrity of sports gaming in R.C. Chapter 3775 and Ohio Adm.Code Agency 3775.

## Kalshi is Operating or Conducting Sports Gaming in Ohio Without a License

From approximately January 2025 through the date of this Notice, Kalshi has operated or conducted sports gaming in Ohio without a license through its online platform[8] and its mobile application. Kalshi offers what it terms "sports event contracts[9]," which allow Ohio consumers to choose the outcome of a sporting event – *e.g.* who will win or lose – and to stake money on that choice. Depending on the result of the sporting event, an Ohio consumer will experience either a monetary gain in excess, or a loss, of the amount that they staked. Ohio consumers are unaware of the outcome of the sporting event prior to entering these "sports event contracts."

Kalshi's "sports event contract" offerings specifically enable Ohio consumers to wager or bet on uncertain outcomes of sporting events like professional and collegiate games and the individual performance statistics of athletes via selecting "yes" or "no" positions on the outcome of the sporting event, with pricing and payout based on perceived probabilities. A "yes" position means a certain sporting event outcome will occur, while a "no" position means the sporting event outcome will not occur. Wagers or bets can be made in dollars or in the number of contracts (each

---

[3] "Wager" or "bet" means "to risk a sum of money or thing of value on an uncertain occurrence." R.C. 3775.01(DD)

[4] "Sporting event' means any professional sport or athletic event, any collegiate sport or athletic event, any Olympic or international sports competition event, any motor race event, any esports event, or any other special event the Ohio casino control commission authorizes for sports gaming, the individual performance statistics of athletes or participants in such an event, or a combination of those." R.C. 3775.01(N)(1).

[5] R.C. 3775.01(Y); 3775.01(G)(1).

[6] R.C. 3775.01(Z); 3775.01(G)(2).

[7] R.C. 3775.01(AA); 3775.01(BB).

[8] https://kalshi.com/category/sports/all-sports

[9] *See KalshiEX, LLC v. Schuler*, 2026 U.S. Dist. LEXIS 47876 (S.D. Ohio).

contract ranges in price from $0.01 to $0.99 that will settle or pay out $1 for the correct outcome and $0 for the incorrect one). Kalshi's marketing materials routinely describe its "sports event contract" offerings as "sports betting" and compare them to bets offered by major sportsbooks. Kalshi's sports gaming offerings utilize quintessential wagering terminology like "spreads," "totals," and "props" and constitute several delineated types of "sports gaming" as described in R.C 3775.01(O)(2). Recently, Kalshi employed a "Combos" feature that enables consumers to place a same-game parlay bet on multiple sporting event outcomes within the same game (*e.g.*, the winner of game and total or team statistical results).

For these reasons, Kalshi's "sports event contracts" constitute "wagers" or "bets" on "sporting events" under Ohio law and, by offering those "sports event contracts" in Ohio, Kalshi is engaging in "the business of accepting wagers on sporting events," thereby operating or conducting sports gaming in this state. Accordingly, Kalshi has violated Ohio law by failing to obtain a sports gaming license as required under the provisions of the Sports Gaming Act, specifically R.C. 3775.03(A)(1).

To legally operate or conduct online sports gaming in Ohio, Kalshi would need to obtain a Mobile Management Services Provider license. To do so, Kalshi would need to apply and pay a nonrefundable fee of at least $1,500,000.[10] *See* R.C. 3775.05(B)(3). Kalshi would also be required to contract with a type A sports gaming proprietor, which would also need to be licensed. R.C. 3775.05(A). In addition, the persons in control of Kalshi, as well as individuals with significant influence over Kalshi's Ohio sports gaming operations, would also need licenses. R.C. 3775.03(C). These licenses are necessary to ensure a regulated sports gaming market that operates with integrity. Despite these obligations, Kalshi has continued to operate or conduct sports gaming in Ohio from approximately January 2025 through at least the date of this Notice without obtaining the appropriate sports gaming license from the Commission in violation of R.C. 3775.03(A)(1).

### Kalshi's Actions Warrant Administrative Action

By continuing to operate without seeking licensure, Kalshi has effectively thwarted the Commission from investigating Kalshi's (and its key employees') suitability. As a result, the Commission also lacks awareness of whether, or to what extent, Kalshi adheres to the various safeguards and guardrails that Ohio law requires. Nevertheless, Kalshi admitted in court filings that 35,000-plus Ohio consumers use its platform, and it is apparent that within Ohio Kalshi offers: (1) sports gaming to 18 to 20 year olds, who are specifically protected by Ohio law (2) a voluntary exclusion program that is less extensive than the Time Out Ohio program mandated by Ohio law, (3) advertising that does not meet the requirements of Ohio law with respect to sports gaming, including advertising describing Kalshi's offerings as a "side hustle" or "money hack," and (4) wagers or bets on sporting events that have been approved by the Commission, and some that have not been approved.[11] Despite offering sports gaming in Ohio, Kalshi does not pay Ohio state taxes on sports gaming receipts or withhold unpaid family support obligations or other state debts from consumers' sports gaming winnings also required by Ohio law.

Ohio law allows the Commission to impose civil penalties against operators engaged in unlicensed sports gaming in Ohio. *See* R.C. 3775.02 and 3775.03 and Ohio Adm.Code 3775-1-08. Similarly, the Commission is authorized to impose a penalty or fine for "[v]iolating or failing to

---

[10] Sports gaming license fees support K-12 education and support for problem sports gambling services
[11] https://compliance.casinocontrol.ohio.gov/catalogue/

meet any provision or requirement of Chapter 3772. or 3775. of the Revised Code or any rules adopted thereunder" and "[e]ngaging in any conduct that undermines the integrity of, or public's confidence in, sports gaming in this state." Ohio Adm.Code §§ 3775-1-08(A)(1) & (8); 3775-1-08(D). In determining the appropriate kind and level of discipline, the Commission may consider the risk to the public and to the integrity of sports gaming in this state, any factors or criteria provided under R.C. Chapters 3772 or 3775 and the rules adopted thereunder, and any other relevant factors. Ohio Adm.Code 3775-1-08(C).

Based upon the foregoing, and pursuant to Ohio law, Kalshi is subject to administrative action for operating or conducting sports gaming without a license, failing to cooperate with the Commission (which includes failing to abide by the Commission's cease and desist order and failing to provide the Commission with the information it requested), and engaging in conduct that undermines the integrity, or public confidence in, sports gaming in Ohio.

Kalshi's conduct up through the date of this Notice warrants administrative action.

**WHEREFORE**, the Commission seeks imposition of a monetary fine and/or civil penalty in amount of $5,000,000 against Kalshi for operating or conducting sports gaming in Ohio without a license issued by the Commission since approximately January 2025 through the date of this notice.

Pursuant to R.C. 119.06, 119.07, 3772.04, or 3775.02, you are entitled to a hearing on this matter. If you wish to request a hearing, the request must be received by the Commission within 30 days of the date of service of this notice. A request may be emailed to the Commission's Hearing Administrator at Lara.Thomas@casinocontrol.ohio.gov. Alternatively, a request may be mailed to:

> Ohio Casino Control Commission
> ATTN: Hearing Administrator
> 100 E. Broad St., 20th Floor
> Columbus, OH 43215

Under Ohio law, legal business entities, such as corporations and limited liability companies, must be represented by an attorney authorized to practice law in this State and that individuals not so authorized may not appear and represent those entities. If you have any questions regarding your status, you should contact an attorney for further guidance. At the hearing and to the extent permitted by law, evidence may be presented and witnesses appearing for and against you may be examined by or on behalf of you. To request a reasonable accommodation due to a disability in accordance with the Americans with Disabilities Act (ADA) for a hearing, please contact Judith Schember, Operations Supervisor & Office Manager, at 380-267-2898 or Judith.Schember@casinocontrol.ohio.gov.

.
                                        Sincerely,

                                        Matthew T. Schuler
                                        Executive Director