

**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W.  |  Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com  |  milbank.com

June 26, 2026

**By Electronic Filing**

Kelly L. Stephens
Clerk of Court
U.S. Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45202-3988

> **Re:** *KalshiEX LLC v. Schuler, et al.*, No. 26-3196
> **FRAP 28(j) Letter Response**

Dear Ms. Stephens:

For numerous reasons, *Nessel* does not support affirmance.

*First*, *Nessel* erred in holding that Kalshi's contracts are not swaps. The court declined to follow the plain-language definition of "swap" on the mistaken belief that this definition is limitless. PageID#1111. But Kalshi does not contend *any* event can underlie a swap; an event must be connected to possible financial consequences, subject to ordinary causation principles. Outcomes of sports events carry potential financial consequences for various stakeholders. Reply Br. 9-10. Moreover, "consumer and commercial transactions" that "are not traded on an organized market or over-the-counter" also are not swaps. Further Definition of "Swap," 77 Fed. Reg. 48,208, 48,247 (Aug. 13, 2012). That tradability requirement—ignored by *Nessel*—supplies an independent limiting principle that explains why the CEA does not "forc[e] broad swaths of ordinary transactions" onto DCMs, such that the federalism canon is inapposite. PageID#1110-1111, PageID#1117. Nor does Dodd-Frank's purported focus on "financial instruments" support artificially narrowing the definition to exclude sports-event contracts. PageID#1106. To the contrary, Congress contemplated that "gaming"-related event contracts would exist and gave the CFTC discretion under the Special Rule to permit or prohibit them on a case-by-case basis. 7 U.S.C. § 7a-2(c)(5)(C).

*Second*, *Nessel* wrongly rejected preemption. Contrary to the text, it relied on certain CEA provisions to conclude the CFTC's exclusive jurisdiction "is not actually so exclusive." PageID#1123. But those provisions preserve state authority only outside the preempted field—not one lets states "directly affect trading on or the operation of a futures market." *Am. Agric.*

MILBANK LLP

NEW YORK | LOS ANGELES | WASHINGTON, D.C. | SÃO PAULO | FRANKFURT
LONDON | MUNICH | HONG KONG | SEOUL | SINGAPORE | TOKYO

*Movement, Inc. v. Bd. of Trade of Chi.*, 977 F.2d 1147, 1156-57 (7th Cir. 1992).  As to impossibility, the court noted a DCM can adopt "fee structures" that treat a category of market participants differently if "reasonably related to the cost of providing access … to a particular category." PageID#1124 (citation modified).  But charging fees based on "information technology or administrative expenses" is not remotely akin to banning users based on geography, which is what Ohio seeks to force Kalshi to do.  Core Principles, 75 Fed. Reg. 80,572, 80,579 (Dec. 22, 2010).

Respectfully submitted,

/s/ William E. Havemann
William E. Havemann

*Counsel for Appellant KalshiEX LLC*


cc:     All Counsel (via ECF)
        Word Count: 341

2