Milbank
**WILL HAVEMANN**
*Partner*
1101 New York Ave., N.W. | Washington, DC 20005
T: +1 (202) 835-7518
whavemann@milbank.com | milbank.com

September 8, 2026

**By Electronic Filing**

Kelly L. Stephens
Clerk of Court
U.S. Court of Appeals for the Sixth Circuit
540 Potter Stewart U.S. Courthouse
100 E. Fifth Street
Cincinnati, OH 45202

**Re: *KalshiEX LLC v. Schuler* and *KalshiEX LLC v. Orgel*, Nos. 26-3196 and 26-5235 – FRAP 28(j) Letter Response**

Dear Ms. Stephens:

*Assad* rejected Defendants' principal argument and the motions panel's only rationale for denying Kalshi an injunction pending appeal—that the CEA does not expressly preempt state law. *Assad* held the CFTC's "exclusive jurisdiction" "excludes all others" and thus "expressly preempts state law." 2026 WL 2543846, at *7. A contrary interpretation would render § 2(a)(1)(A)'s saving clause "superfluous." *Id.* Nor did Congress's "more explicit language" in § 16(e)(2) undermine the exclusive-jurisdiction provision's preemptive effect. *Id.* The panel thus declined to apply a presumption against preemption, instead "focus[ing] on the plain wording." *Id.* (citation omitted).

*Assad* further concluded Kalshi's contracts are not "swaps." Its analysis is unpersuasive.

- *Assad* ignored that the CFTC's "exclusive jurisdiction" applies to *all* "agreements" traded on-DCM, not just swaps. 7 U.S.C. § 2(a)(1)(A).
- *Assad* acknowledged the Special Rule places "swaps" involving "gaming" within CFTC jurisdiction. 2026 WL 2543846, at *12-14. Indeed, Judge Lee's concurrence noted the Special Rule does not "seem to categorically bar all gaming contracts." *Id.* at *19. But the panel concluded a CFTC regulation prohibits such contracts. Even if that were correct (it is not), it reinforces preemption. The regulation could only prohibit contracts involving gaming if the CFTC has jurisdiction over them. *Assad*'s reasoning will soon be obsolete because the CFTC's proposed regulation clarifies sports-event contracts are permitted.
- *Assad* acknowledged the "colorable textual basis" to conclude Kalshi's contracts are "swap[s]." *Id.* at *14 (citation modified). But it held sports-event contracts don't qualify because they involve "outcome[s]" rather than events and because swaps must involve

"inherent[ ]" financial consequences. *Id.* at *11-12. That flouts the text. An "event" includes an "outcome," and the CEA requires events with "potential"—not "inherent"—economic consequences. Any contention sports events categorically lack potential economic consequences is self-evidently incorrect.

- *Assad* adopted extratextual limitations for fear the swap definition would otherwise lack any. *Id.* at *11. But the definition excludes events without any potential economic consequences, subject to causation principles.
- The panel wrongly believed Congress didn't intend the CEA to preempt gambling laws. A main purpose of CFTC exclusive jurisdiction was to preempt long-standing state efforts to ban futures as "gambling." *Schuler* Appellant Br. 6-12.

Respectfully submitted,

*/s/ William E. Havemann*
William E. Havemann

*Counsel for KalshiEX LLC, Appellant in No. 26-3196 and Appellee in No. 26-5235*

cc: All Counsel (via ECF)
Word Count: 350